In the Matter of TROY PUBLISHING COMPANY, INC., Petitioner, v M. ANDREW DWYER, JR., as Judge of County Court of the County of Rensselaer, et al., Respondents.

Third Department, October 31, 1985

### APPEARANCES OF COUNSEL

*O'Connell & Aronowitz* (*Peter L. Danziger* of counsel), for petitioner.

*Lawrence C. Connors* (*Arthur F. Glass, Jr.,* of counsel), for David M., respondent.

*Robert Abrams, Attorney-General* (*Lisa Margaret Smith* of counsel), for M. Andrew Dwyer, Jr., respondent.

### OPINION OF THE COURT

YESAWICH, JR., J.

A felony complaint dated August 15, 1984 charged respondent David M.[*] with murder, robbery and burglary. Following a

---

[*] The petition *sub judice* named David M. as a respondent. Petitioner concedes that David M. is an inappropriate respondent, although it was proper to notify him of the proceedings. As to him, then, the petition is dismissed.

preliminary hearing held six days later, the charges were dismissed for lack of probable cause. A series of articles printed in a newspaper published by petitioner reported the events surrounding the homicide, David M.'s alleged involvement therein and the related court proceedings.

On September 28, 1984, the People, in an effort to secure evidence believed to bear on the killing, moved in Rensselaer County Court for an order compelling David M. to provide samples of his blood and hair. Respondent Judge M. Andrew Dwyer, Jr. (hereinafter respondent), heard the motion, at the outset of which David M.'s counsel made an application to have the courtroom closed to the press and public. After according a reporter from petitioner's newspaper, as well as its counsel, an opportunity to be heard in opposition to the closure application, respondent ordered the courtroom closed and declined to make a transcript of the hearing available to petitioner on the ground that David M.'s privacy interest outweighed the newspaper's interest in disclosure; respondent also observed that petitioner would get the information it sought if and when David M. was later indicted. This proceeding ensued.

Respondent's initial argument, that the petition fails to allege facts sufficient to justify relief under CPLR article 78, is virtually identical to that previously considered and rejected by this court when respondent's motion to dismiss the petition herein was denied. The doctrine of law of the case precludes relitigating that issue (*see, e.g.,* Siegel, NY Prac § 276, at 333).

Petitioner's principal claim is that there was insufficient justification for closing the hearing and that, by virtue of Judiciary Law § 4 and the 1st Amendment of the US Constitution, such proceedings are presumptively open to the public.

Judiciary Law § 4 does, of course, provide that "[t]he sittings of every court within this state shall be public", but this right of the public and the press to attend court proceedings is not absolute. Indeed, even when a trial court is considering airing proceedings relating to one who is formally accused of a crime, the court is constrained to balance and reconcile, as far as possible, the accused's right to a fair trial and the access rights of the public and press (*Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430, 438; *Matter of Gannett Co. v De Pasquale,* 43 NY2d 370, 380-381, *affd* 443 US 368; *Matter of Oneonta Star Div. of Ottaway Newspapers v Mogavero,* 77 AD2d 376, 378, *appeals dismissed* 53 NY2d 796). The point of differ-

ence here, and the distinction is a formidable one, is that this statute has yet to be invoked to govern the propriety of closure where the rights and interests at stake are those of a mere suspect.

Formal accusation of an individual by way of an indictment or information (*see,* CPL 190.60, 190.70, 195.10) changes an investigation of criminal activity into a particularized prosecution. Traditionally, the investigatory process, notably that of Grand Juries, which precedes disclosure of the identity of a defendant, has been cloaked in secrecy (*see,* CPL 190.25 [4]; Public Officers Law § 87 [2] [e]; *see, Lewis v Roux Trucking Corp.,* 222 App Div 204, 206). The reasons for this are several and include "protection of an innocent accused from unfounded accusations" if in fact no indictment is returned (*People v Di Napoli,* 27 NY2d 229, 235). There is simply no blinking the stigma and detriment to one's reputation and employment prospects which frequently flow from merely having been subjected to criminal process (*Matter of Hynes v Karassik,* 47 NY2d 659, 662). As a consequence, courts historically have been sensitive to the need of guarding the privacy interests of suspects against intrusions from organized society (*see, Matter of Abe A.,* 56 NY2d 288, 290).

Furthermore, the underlying proceeding at issue, one to compel production of a suspect's blood and hair samples, is comparatively new and has its origin in the court's power to issue warrants (*supra,* p 294); hence, the circumstances and considerations which attend the issuance of warrants provide a useful analogy. In this regard, it is noteworthy that in determining an application for a search warrant, a hearing and examination of witnesses is not inappropriate (*see,* CPL 690.40 [1]), but there is no precedent for opening the process to the public. In fact, the use of an anonym to keep confidential the identity of the presumptively innocent suspect has been condoned by the Court of Appeals (*supra,* p 291, n 1). Accordingly, we are of the view that proceedings to compel production of corporeal evidence from a suspect are beyond the reach of the access provision of Judiciary Law § 4.

For the same reasons, we find no merit to petitioner's constitutional argument. The limited 1st Amendment public right of access to criminal proceedings emanates from the long, historical tradition of openness of criminal trials and the major role which public access plays in the proper functioning of the criminal justice process (*see, Globe Newspaper Co. v Superior Ct.,* 457 US 596, 605-606; *Richmond Newspapers v Virginia,* 448 US 555), whereas proceedings to obtain corporeal evidence are

creatures of recent judicial creation which derive from the court's power to issue search warrants, a traditionally nonpublic component of the criminal process.

As the State's interest in preserving the anonymity of uncharged suspects is deeply entrenched, we perceive no abuse of discretion on respondent's part in this case. Finally, we note that although this case has already received extensive media attention, that fact does not, in our view, effect an abdication of a suspect's continued expectation of privacy while the criminal investigation is being conducted (*see, Oneonta Star Div. of Ottaway Newspapers v Mogavero, supra,* p 379).

MAIN, J. P., WEISS, LEVINE and HARVEY, JJ., concur.

Petition dismissed, without costs.